

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 17 1998 ᶜᴷ

DAVID J. MALAND, CLERK
BY
DEPUTY *Carolyn Keller*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

UNITED STATES OF AMERICA, ex rel.          )
J. BENJAMIN JOHNSON, JR., et al.,          )
                                           )
                 Plaintiffs,               )
                                           )
        v.                                 )
                                           )        C.A. NO. 9:96CV66
                                           )        JUDGE HANNAH
SHELL OIL COMPANY, et al.                  )
                                           )
                 Defendants.               )
_____)

### UNITED STATES' RESPONSE TO
### DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
### JURISDICTION OR ON PRIMARY JURISDICTION GROUNDS

The United States hereby opposes the motion to dismiss of defendants Texaco, Inc.,

Texaco Oil & Trading Supply Co., Texaco Trading & Transportation, Inc., Texaco Producing,

Inc., Texaco Refining & Marketing, Inc., Four Star Oil & Gas Co.

For the reasons set out in the accompanying memorandum of points and authorities, the

United States hereby requests that the Court deny defendants' motion to dismiss the government's

complaint for lack of subject matter jurisdiction or, in the alternative, on primary jurisdiction

grounds.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

MIKE BRADFORD
United States Attorney
Eastern District of Texas

*O. Kenneth Dodd* *by permission by Andrea Parker*

O. KENNETH DODD
Texas Bar No. 05931685
Assistant U.S. Attorney
350 Magnolia Street, Suite 150
Beaumont, TX  77701
Ph:     (409) 839-2538
Fax:    (409) 839-2538
ATTORNEY IN CHARGE

*Dodge Wells* *by permission by Andrea Parker*

JOYCE R. BRANDA
ALAN E. KLEINBURD

DODGE WELLS
District of Columbia Bar No. 425194
ATTORNEY IN CHARGE

PATRICIA R. DAVIS
RINA TUCKER
TOM LEDERMAN
ROBERT MCAULIFFE
Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Ph:     (202) 307-0407
Fax:    (202) 514-7361

Dated: August 14, 1998

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing United States' Response to Defendants' Motion to Dismiss and Supporting Memorandum were served by United States mail on the 14th day of August, 1998, on counsel of record in this case.

*O. Kenneth Dodd* *by permission by*
*Andrea Parker*
O. KENNETH DODD

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

UNITED STATES OF AMERICA, ex rel.       )
J. BENJAMIN JOHNSON, JR., et al.,        )
                                         )
              Plaintiffs,                )
                                         )
       v.                                )
                                         )      C.A. NO. 9:96CV66
                                         )      JUDGE HANNAH
SHELL OIL COMPANY, et al.                )
                                         )
              Defendants.                )
_____ )

**MEMORANDUM OF THE UNITED STATES OPPOSING
MOTION AND MEMORANDUM OF THE TEXACO
DEFENDANTS TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION OR ON PRIMARY JURISDICTION GROUNDS**

The Texaco defendants ("Texaco") have moved to dismiss the complaint filed by the

United States on the grounds that the government has elected to pursue its False Claims Act

claims through the administrative process. Texaco's motion, while creative, is devoid of factual

support or legal merit and should be denied.

Texaco points out that after the relators filed their initial complaints under seal and before

the United States intervened in this case, the Minerals Management Service ("MMS") of the

Department of the Interior conducted audits of Texaco and issued two orders to pay additional

royalties for oil produced in California. Motion and Memorandum to Dismiss The Relators'

Second Consolidated Complaint and the Complaint of the United States for Lack of Subject

Matter Jurisdiction, or, in the Alternative, on Primary Jurisdiction Grounds (Texaco memo") at

12-15. Texaco asserts that the orders to pay contain the same allegations concerning

underpayment of royalties by Texaco as are stated in the Government's complaint in this case. Id.

at 14, 15.[1]   Texaco further asserts that the orders to pay constitute an election by the

Government, pursuant to 31 U.S.C.§ 3730(c)(5) to pursue its claims for Texaco's knowing

underpayment of royalties through the administrative process.

Section 3730(c)(5) states, in relevant part:

> [t]he Government may elect to pursue its claim through any
> alternative remedy available to the Government, including any
> administrative proceeding to determine a civil monetary penalty.  If
> any such alternate remedy is pursued in another proceeding, the
> person initiating the action shall have the same rights in such
> proceeding as such person would have had if the action had
> continued under this section.

Texaco's argument suffers from numerous fatal deficiencies. First, the orders to pay do not

expose Texaco to civil monetary penalties, as that term is used in § 3730(c)(5), for underpayment

of royalties. Second, in the view of the Department of the Interior, an order to pay is not a

"claim," and therefore issuance of orders to pay to Texaco cannot represent a decision by the

Government to pursue its False Claims Act claim through an alternative remedy. Third, an MMS

audit and a resulting order to pay is not an "administrative proceeding." Fourth, § 3730(c)(5)

requires an explicit election by the Government to pursue an administrative remedy. Fifth, MMS

---

[1]   Texaco's ability to analyze the Government's complaint refutes Texaco's claims, in
support of its motion to dismiss the complaint pursuant to Rule 9(b), that "the Texaco defendants
cannot reasonably formulate a responsive pleading" to the complaint, Motion and Memorandum
to Dismiss the Complaint of the United States of America Pursuant to Rules 9(b) and 12(b)(6) at
3, and that it is "virtually impossible for Texaco to make an informed response" to the complaint,
Id. at 13.

have authority to make an election pursuant to § 3730(c)(5) to elect an alternative remedy.

Section 3730(c)(5) was added to the False Claims Act in 1986.  The Senate Report on the

1986 amendments stated that the new provision:

> [c]larifies that the Government, once it intervenes and takes over a
> false claim suit brought by a private individual, may elect to pursue
> any alternative remedy for recovery of the false claim which might
> be available under the administrative process.

S. Rep 99-345 at 27 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5292.[2]  The orders to pay,

which are exhibits 5 and 6 to Texaco's memo, do not assert that Texaco knowingly underpaid

royalties and do not purport to seek civil monetary penalties as remedies for recovery of false

claims.  In fact, the orders to pay do not seek civil monetary penalties for any reason.  The Federal

Oil and Gas Royalty Management Act of 1982 ("FOGRMA"), 30 U.S.C. § 1701 et seq.,

authorized the Department of Interior to assess civil penalties upon providing notice and a right to

hearing.  30 U.S.C. § 1719.  The regulations implementing the civil penalty provisions of § 1719

are set forth at 30 CFR § 241.51, which is referenced in both the orders to pay.  Civil penalty

proceedings are initiated by a "notice of noncompliance," 30 CFR § 241.51(a),(c).  MMS is to

issue a "penalty notice" "to any person subject to penalties under this section." 30 CFR §

241.51(a).  MMS has not issued to Texaco notices of noncompliance or penalty notices for

underpayment of royalties.

The Department of Interior has also promulgated regulations, 43 CFR Part 35,

implementing administrative remedies for fraudulent claims or statement, as authorized by the

---

[2]  The Senate Report's discussion of what was enacted as § 3730(c)(5) is Exhibit 1 to this
memorandum.

Programs Fraud Civil Remedies Act of 1986 ("PFCRA"), 31 U.S.C. § 3801 et seq.[3/]  The

regulations provide that administrative proceedings for fraudulent claims are initiated by a

complaint, which may not be issued without written approval by the Department of Justice.   43

CFR § 35.6, 35.7.  No such complaint against Texaco has been authorized by the Department of

Justice or issued by the Department of the Interior.

Texaco argues that the orders to pay seek statutory interest on royalty underpayments and

that the interest charges constitute civil monetary penalties. Texaco memo at 7-8, 14-15.

Texaco's argument rests on a paragraph in the House Report on FOGRMA which uses the term

"interest penalty" as a synonym for "interest charge."[4/]  The statute itself distinguishes between

"civil penalties, " which the Department is authorized by 30 U.S.C. § 1719 to assess, for specific

violations, after notice and an opportunity for hearing, and "interest charges," which are required

by 30 U.S.C. § 1721 to be charged on underpayments or late payments of royalties (and which the

---

[3/]  The Senate Report on the 1986 amendments to the False Claims Act specifically
reference administrative proceedings pursuant to PFCRA as the type of alternative proceedings
authorized by 31 U.S.C. § 3730(c)(5).

[4/]  Contrary to Texaco's implication, the House Report uses the term "interest penalty" to
refer to any interest charge, not as specifically referring to interest charges at the Internal Revenue
Service rate:

> Section 116 - Interest Charges
> This section established interest penalties for late payments in the
> cases where royalty payments are not received by the Secretary on
> the date that such payments are due and when the Secretary fails to
> make payment to a State or Indian tribe on the date required.  The
> interest penalty so charged is at the rate applicable under section
> 6621 of the Internal Revenue Code of 1954. . . .

H.R. Rep. No. 97-859 at 36, reprinted in 1982 U.S.C.C.A.N. 4268, 4290.

Department must pay on any underpayments or late payments to States).  In any event, the important issue is not what Congress thought it was doing in enacting FOGRMA, but what Congress intended in enacting 31 U.S.C. § 3730(c)(5).  Texaco has provided no support for its apparent position that Congress intended to include a routine audit or review which potentially might result in assessment of interest charges as an administrative proceeding to determine a civil monetary penalty.

Moreover, as Texaco's co-defendants have pointed out, the Department of the Interior does not consider an order to pay to constitute a claim by the agency.  See Motion and Memorandum to Dismiss Under Rule 12(b)(6) on Primary Jurisdiction Grounds, filed May 18, 1998 at 8, and Exhibit F thereto.  Since the Department does not consider the orders to pay claims against Texaco, the orders cannot constitute an election to pursue the government's claims in this case through administrative proceedings.  Further, the audit and resulting orders to pay are not "administrative proceedings" as that term is used in § 3730(c)(5).  The one case cited by Texaco which considered §3730(c)(5), United States ex rel. Dunleavy v. County of Delaware, 123 F.3d 734 (3rd Cir. 1997), expressed doubt that an audit and a resulting demand for payment amounted to the type of alternate proceeding contemplated by the section.  123 F.3d at 739, n.8.[5/] The court's doubt is well taken.  The Administrative Procedures Act defines an "agency proceeding" as a rule making, an adjudication, or a licensing proceeding.  5 U.S.C. § 551(12).  An audit is in none of these categories.  An agency should not have to choose between conducting normal audit and oversight activities on one hand or preserving its rights under the False Claims Act on the other hand.

_____

[5/] The court determined for other reasons that the section was inapplicable.

As both the legislative history to § 3730(c)(5), Exhibit 1 to this memorandum, and <u>United States ex rel. Dunleavy v. County of Delaware</u>, 123 F.3d 734, 739 (3rd Cir. 1997), make clear, the section does not apply unless the Government makes an explicit election to pursue an alternative remedy. That election must be made by the Department of Justice. As we argued in the government's response to the motion by Texaco's co-defendants to dismiss on primary jurisdiction grounds, federal agencies, including Interior, are specifically prohibited, by statute, from adjudicating or compromising civil fraud claims. <u>See</u> United States' Memorandum Opposing Defendant's Motion and Memorandum to Dismiss under Rule 12(b)(6) on Primary Jurisdiction Grounds at 3. Texaco does not assert that the Department of Justice has elected an alternative remedy after intervention. For all of these reasons, Texaco's motion must be denied.

Texaco also adopts and joins in the Motion and Memorandum to Dismiss Under Rule 12(b)(6) on Primary Jurisdiction Grounds, filed May 18, 1998 by its co-defendants. On July 23, 1998, the Court entered an order denying the primary jurisdiction motion filed by Texaco's co-defendants, and that order is the law of the case. If any response is necessary, the United States stands on the United States' Memorandum Opposing Defendant's Motion and Memorandum to Dismiss under Rule 12(b)(6) on Primary Jurisdiction Grounds.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

MIKE BRADFORD
United States Attorney
Eastern District of Texas


*O. Kenneth Dodd* * by permission by
*Audua Paula*

O. KENNETH DODD
Texas Bar No. 05931685
Assistant U.S. Attorney
350 Magnolia Street, Suite 150
Beaumont, TX  77701
Ph:   (409) 839-2538
Fax:  (409) 839-2538
ATTORNEY IN CHARGE


*Dodge Wells* * by permission by
*Audua Paula*

JOYCE R. BRANDA
ALAN E. KLEINBURD

DODGE WELLS
District of Columbia Bar No. 425194
ATTORNEY IN CHARGE

PATRICIA R. DAVIS
RINA TUCKER
TOM LEDERMAN
ROBERT MCAULIFFE
Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Ph:   (202) 307-0407
Fax:  (202) 514-7361

Dated: August 14, 1998

# EXHIBIT 1

LEGISLATIVE HISTORY
P.L 99–562

## FALSE CLAIMS AMENDMENTS ACT OF 1986

*P.L. 99–562, see page 100 Stat. 3153*

### DATES OF CONSIDERATION AND PASSAGE

*Senate August 11, October 3, 1986*

*House September 9, October 7, 1986*

Senate Report (Judiciary Committee) No. 99–345,
July 28, 1986 [To accompany S. 1562]

House Report (Judiciary Committee) No. 99–660,
June 26, 1986 [To accompany H.R. 4827]

### Cong. Record Vol. 132 (1986)

*The Senate bill was passed in lieu of the House bill. The Senate Report
is set out below.*

## SENATE REPORT NO. 99–345

[page 1]

The Committee on the Judiciary, to which was referred the bill
(S. 1562) to amend the False Claims Act, and title 18 of the United
States Code regarding penalties for false claims, and for other pur-
poses, having considered the same, reports favorably thereon with
an amendment in the nature of a substitute and recommends that
the bill, as amended, do pass.

* * * * *

## I. PURPOSE OF THE BILL

The purpose of S. 1562, the False Claims Reform Act, is to en-
hance the Government's ability to recover losses sustained as a
result of fraud against the Government. While it may be difficult
to estimate the exact magnitude of fraud in Federal programs and

[page 2]

procurement, the recent proliferation of cases among some of the
largest Government contractors indicates that the problem is
severe. This growing pervasiveness of fraud necessitates moderniza-
tion of the Government's primary litigative tool for combatting
fraud; the False Claims Act (31 U.S.C. 3729, 3730). The main por-
tions of the act have not been amended in any substantial respect
since signed into law in 1863. In order to make the statute a more
useful tool against fraud in modern times, the Committee believes
the statute should be amended in several significant respects.

The proposed legislation seeks not only to provide the Govern-
ment's law enforcers with more effective tools, but to encourage

situations where new and significant evidence is found and the
Government can show "good cause" for intervening, paragraph (2)
provides that the court may allow the Government to take over the
suit. Upon request, the Government may also be served with copies
of all pleadings and depositions associated with any *qui tam* action
it declines to take over.

Subsection (c)(3) of section 3730 clarifies that the Government,
once it intervenes and takes over a false claim suit brought by a
private individual, may elect to pursue any alternate remedy for
recovery of the false claim which might be available under the ad-
ministrative process. The Department of Health and Human Serv-
ices is currently authorized to use administrative proceedings for
the recovery of some false claims. Earlier in this Congress, the
Senate Governmental Affairs Committee favorably reported S.
1134, the Program Fraud Civil Penalties Act, which would extend
this type of administrative mechanism for addressing false claims
to all Executive agencies. The Committee intends that if civil mon-
etary penalty proceedings are available, the Government may elect
to pursue the claim either judicially or through an administrative
civil penalty proceeding. In the event that the Government chooses
to proceed administratively, the *qui tam* relator retains all the
same rights to copies of filings and depositions, to objections of set-
tlements or dismissals, to taking over the action if the Government
fails to proceed with "reasonable diligence", as well as to receiving
a portion of any recovery. If the Government proceeds administra-
tively, the district court shall stay the civil action pending the ad-
ministrative proceeding and any petitions by the relator, in order
to exercise his rights, will be to the district court. While the Gov-
ernment will have the opportunity to elect its remedy, it will not
have an opportunity for dual recovery on the same claim or claims.
In other words, the Government must elect to pursue the false
claims action either judicially or administratively and if the Gov-
ernment declines to intervene in a *qui tam* action, it is estopped
from pursuing the same action administratively or in a separate ju-
dicial action.

## 31 U.S.C. 3730, SUBSECTION (d)

Subsection (d) of section 3730 delineates the *qui tam* relator's
right to a portion of any recovery resulting from a successful false
claims suit initiated by the relator.

Subsection (d)(1) provides that when the Government has inter-
vened, taken over the suit, and produced a recovery either through
a settlement agreement or a judgment, the relator will receive be-
tween 10 and 20 percent of the recovery.

Subsection (d)(2) provides that if the relator has litigated the
false claims action successfully and the Government did not take
over the suit, the relator will be awarded between 20 and 30 per-
cent of the judgment or settlement proceeds.

Current law allows relator awards of up to 10 percent in suits
the Government takes over, and up to 25 percent where the relator
litigates without the Government. The new percentages found in
subsection (d) (1) and (2) do not substantially increase the possible
recovery available to a *qui tam* relator, but do create a guarantee